**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM SMILEY,**<br>**Plaintiff**<br><br>**v.**<br><br>**LIEUTENANT RICK LUSSI; DETECTIVE DANIEL LEWIS; and DETECTIVE TIM MINNICK,**<br>**Defendants** | : | **No. 3:25cv1518**<br><br>**(Judge Munley)** |

# MEMORANDUM ORDER

Plaintiff William Smiley was arrested and jailed for almost two years for his alleged involvement in the abduction and sexual assault of a 14-year-old girl while she was held captive for several days.[1] (Doc. 1, Compl. ¶¶ 7–8, 10–11). According to plaintiff's complaint, John Watson committed these offenses, and plaintiff was not one of the perpetrators. Cf. id. ¶¶ 7, 9, 14.

Lieutenant Rick Lussi, Detective Daniel Lewis, and Detective Tim Minnick of the Plains Township Police Department in Luzerne County allegedly knew that Smiley was not a perpetrator but identified him as such in an affidavit of probable cause. Id. ¶ 9. The charges were dismissed approximately four years later. Id.

[1] The background facts discussed in this memorandum order are derived from the allegations in Smiley's complaint and an affidavit of probable cause attached to defendants' reply brief. (Docs 1, 18-1). At this posture, the court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). The court, however, makes no determinations as to the veracity of these allegations.

¶ 13. Shortly thereafter, plaintiff filed this action under 42 U.S.C. § 1983 alleging malicious prosecution by Lussi, Lewis, and Minnick.[2] Id. ¶¶ 20–26. Defendants responded with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15).

To survive a motion to dismiss, "a complaint must provide 'a short plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pleaded "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 566). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pa. State Univ., 138 F.4th 731, 743 (3d Cir. 2025). The second step involves reviewing the operative pleading and "disregarding any formulaic recitation of the elements of a

[2] The court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual." Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citation modified). "The third step evaluates the plausibility of the remaining allegations." Id. In evaluating the plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted).

Smiley's concise complaint asserts one § 1983 claim for malicious prosecution. That claim arises out of the Fourth Amendment's protection against unreasonable seizures and derives from plaintiff's prosecution ending without a conviction. Thompson v. Clark, 596 U.S. 36, 39, 42 (2002). "To prevail on a malicious prosecution claim, a plaintiff must demonstrate that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" Harvard v. Cesnalis, 973 F.3d 190, 203 (3d Cir. 2020) (quoting Est. of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

With their motion to dismiss, defendants argue that Smiley has not alleged sufficient facts on element three, a lack of probable cause. (Doc. 16, Br. in Supp. at 6–11). For a defendant to evade liability for malicious prosecution because of the existence of probable cause, there must have been probable cause for all charges brought against the criminal defendant. Chiaverini v. City of Napoleon, 602 U.S. 556, 558–59 (2024). "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical' and it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.' " United States v. Donahue, 764 F.3d 293, 301 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230–31 (1983)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citations omitted). "Generally, 'the question of probable cause in a section 1983 damage suit is one for the jury.'" Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting Montgomery v. De Simone. 159 F.3d 120, 124 (3d Cir. 1998)). "The district court may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

In the first round of briefing on the pending motion, defendants argued that the plaintiff's allegations were conclusory and mere recitals of the malicious prosecution elements. (Doc. 16 at 5–7). To counter, Smiley argued that the facts giving rise to probable cause were exclusively within defendants' knowledge. (Doc. 17 at 5–6). Additionally, in furthering his arguments, plaintiff referred to allegations that his bail was reduced, and he was released on an ankle monitor in June 2023 and averments that the charges were eventually dropped by the Commonwealth in July 2025. Id. at 7–8.

Defendants' reply brief injected the affidavit of probable cause into the controversy.[3] (Doc. 18-1). Relevant portions are as follows:

---

[3] As this case stands, the court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Because plaintiff's complaint references the affidavit of probable cause, (Doc. 1, ¶ 6), it may be properly considered by the court in addressing defendants' pending motion to dismiss. The court notes that defendants filed an unsigned copy of the affidavit. (Doc. 18-1). Despite the lack of a signature, Smiley filed a sur-reply brief indicating that the affidavit was "now before the court[.]" (Doc. 21) (citation modified).

The court also notes that defendants never explained why they waited until their reply brief to bring up the contents of affidavit. Arguments raised for the first time in a reply brief may be deemed waived. Javitz v. Luzerne Cnty., 616 F. Supp. 3d 394, 407 (M.D. Pa. 2022), aff'd, No. 22-2519, 2023 WL 5842299 (3d Cir. Sept. 11, 2023); see also Spriggs v. City of Harrisburg, 679 F. Supp. 3d 144, 155 n.3 (M.D. Pa. 2023) ("[A] moving party cannot support its motion with a sparse argument, wait for the non-moving party to note the sparseness of the argument, then respond with a reply brief that sets forth the full argument that should have been made in the original supporting brief. As alluded to above, Smiley was granted leave to file a sur-reply, (Doc. 20), which challenged the contents of the affidavit. Because plaintiff has not argued a lack of authenticity and has been afforded an opportunity to counter the arguments in the reply briefs, the court will decide defendants' motion to dismiss based on the affidavit of probable cause as it is filed.

On 10/25/2021 at approximately 2:45 pm, an interview with the victim was conducted at the Luzerne County Children's Advocacy Center. During the interview, the victim reported that she was physically forced into the silver Volvo, the vehicle was used over a three-day period to transport suspect and victim, and victim reported that she was sexually assaulted over a three-day period, some of which occurred in the silver Volvo.

The VICTIM stated she was taken by "John" to his cousin's apartment at "Buckingham Palace." The VICTIM further reported that there was white male with a red beard, who identified himself as “Nate” in the vehicle. Once at the cousin’s residence, “John” went into the residence and the VICTIM and “Nate” stayed in the car. “John” came out of the residence and took her into his cousin’s apartment. The VICTIM stated they were only in there for a few minutes. The VICTIM stated “John”, “Nate” and her [sic] went to the convenient store just down the road from the apartment. Once there, “John” went into the store while she and “Nate” stayed in the car.

“John” then drove back to the cousin’s apartment. The VICTIM stated that when she entered "Buckingham Palace" apartment with "John". She stated she met a black male who opened the hallway door for them. She was then led down a hallway to a door that was "white". The VICTIM stated that they walked through the door into an apartment. Once inside the apartment, the VICTIM stated that "John" and the other black male took her into a bedroom where both men were touching her private parts under her clothing. The VICTIM stated John put his hands down her pants as the other black male was touching her breasts.

The VICTIM further stated that "John" then took her into the bathroom where he made her have sex with him as she was standing bent over the sink with "John" behind her. . . . The VICTIM stated that she had to do that for a couple minutes before the other black male came in the bathroom and had "John" left [sic] the bathroom. The VICTIM stated

> that she was then forced to perform oral sex on the unidentified black male also in the bathroom. Afterwards, 'John" and the VICTIM left the apartment and got back into the Volvo.
>
> Detective BALOGH, obtained video surveillance from Main Optical. The video surveillance shows that on 10/22/2021 at approximately 9:15 pm, a silver Volvo sedan arrives at 56 Main Street Luzerne, where a black male exits the front driver's seat and proceeds to 56 Main Street. At 9:17 pm, the black male is observed exiting 56 Main Street and returning to the silver Volvo. At 9:17 pm, a white female exits the rear passenger seat and a white male exits the front passenger seat. The black male and white female enter 56 Main Street Luzerne at approximately 9:18 pm. At approximately 9:21 pm, a black male and white female are observed exiting 56 Main Street, at this time, the black male, white female and white male are observed entering the silver Volvo. The vehicle then leaves 56 Main Street and returns to 56 Main Street at approximately 9:23 pm. At this time, a black male, white female and white male exit the vehicle. [T]he black male and white female proceed into 56 Main Street and the white male walks north on Main Street towards Bennett Street. At approximately 9:46 pm, a black male and white female are observed exiting 56 Main Street, entering the silver Volvo and leaving the area.
>
> Investigators were able to obtain video surveillance from [] inside the apartment building doorways and hallways of 56 Main Street which are [sic] consistent with other corroborating evidence. Investigation revealed that the unknown black male who resides in apartment 4 is identified as William Smiley.
>
> Investigators were able to identify "Nate" (herein is referred to as CW 1). CW1 was interviewed by investigators and corroborated the facts from the victim and the video surveillance.

Id. at 1–2.

The complaint alleges that Smiley was arrested and charged with statutory sexual assault, involuntary deviate sexual intercourse, sexual assault, and corruption of minors based on this affidavit. (Doc. 1, Compl. ¶¶ 8–11). An arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest and malicious prosecution claims. Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017); Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). But, in these circumstances, a plaintiff must demonstrate that "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " Wilson, 212 F.3d at 786-87 (quoting Sherwood, 113 F.3d at 399).

The parties quarrel over identification of plaintiff as a perpetrator in the affidavit. Per defendants, the affidavit of probable cause "identifies the acts that support the charges and the person who was identified to have performed those acts." (Doc. 18 at 6). Plaintiff counters that neither the victim nor the cooperating witness ever identified him. (Doc. 21 at 1–3). Per plaintiff, his identification "was entirely circumstantial and based on apartment residency." Id. at 2. After review, however, defendants' affidavit cites facts and circumstances supporting the identification of the plaintiff as a perpetrator of the offenses.

According to the affidavit, officers viewed "video surveillance from . . . inside the apartment building doorways and hallways of 56 Main Street which are consistent with other corroborating evidence." (Doc. 18-1 at 2). Such other evidence, according to the affidavit, includes surveillance video from a nearby business of people coming and going outside the building. Such other evidence includes the statements made by the minor victim in her interview with police. As the victim's interview translates to the affidavit, once the victim was inside "Buckingham Palace," she was met by a black male and led down a hallway to a white door into an apartment where she was sexually assaulted. From a plain reading of the affidavit, the defendants used various data points to support charges against the plaintiff. That is, defendants linked the inside surveillance, outside surveillance, the victim's statement, and apartment residency to identify the plaintiff as one of the perpetrators. Plaintiff's complaint has not otherwise identified an omission or false statement to challenge these details of the affidavit.

Therefore, based on the laconic allegations in the complaint and the contents of the affidavit of probable cause, the court must agree with defendants' assertion that the operative pleading "has not identified, referenced, or even alluded to any specific facts contained in the [a]ffidavit that were omitted or

misrepresented" such that a malicious prosecution claim is plausible. (Doc. 18 at 5). Their motion to dismiss will be granted.

Nonetheless, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Although Smiley's sur-reply brief may be read as doubling down on his original allegations, the court cannot conclude that amendment would be futile. That is, the plaintiff should be afforded an opportunity to identify what facts were false or misleading in the affidavit of probable cause.

Additionally, to support the plausibility of his malicious prosecution claim, Smiley constructed opposition arguments about bail being reduced and charges being dismissed in the criminal case, (Doc. 17 at 7–8), but his actual allegations sink their persuasiveness due to their conflicting nature. Plaintiff's complaint alleges that, in June 2023, plaintiff's bail was reduced to $250,000 and he was released on bail "albeit with restrictive conditions and an ankle monitor." (Doc. 1, ¶ 12). Plaintiff also alleges that, in July 2025, all charges were dismissed "and he was finally released from jail." Id. ¶ 13. The complaint is not clear as to when and why plaintiff was released from jail. To the extent that plaintiff seeks the

benefit of all reasonable inferences at the motion to dismiss stage, an amended complaint will allow him to address these clashing allegations.

Accordingly, for the reasons set forth above, it is hereby **ORDERED** as follows:

1) Defendants' motion to dismiss, (Doc. 15), is **GRANTED**;

2) Plaintiff's complaint is **DISMISSED** without prejudice; and

3) Plaintiff may file an amended complaint within 21 days addressing the deficiencies above; otherwise, the court will dismiss this action with prejudice for the reasons above, for want of prosecution, and for failure to comply with a court order.

**Date:** 11/18/26

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Court**